UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SPEDAG AMERICAS, INC.,** | § § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. 3:17-CV-0926-BT |
| **BIOWORLD MERCHANDISING, INC.** | § § | |
| Defendant. | § § | |

<u>**PLAINTIFF SPEDAG AMERICAS, INC.'S
MOTION FOR SUMMARY JUDGMENT**</u>

TABLE OF CONTENTS

**TABLE OF AUTHORITIES**..................................................................................................3

**FACTS NOT IN ISSUE**........................................................................................................4

**ADDITIONAL BACKGROUND**.........................................................................................4

**SUMMARY JUDGMENT STANDARD**..............................................................................5

**ARGUMENTS AND AUTHORITIES**.................................................................................6

    I.    The Contract Terms and Conditions set forth in 49 CFR §1035, App. B, the Code of Federal Regulation's Uniform Straight Bill of Lading, constitute contractual terms governing the shipments at issue, and pursuant to those terms, Defendant Bioworld Merchandising, Inc. is liable to Plaintiff for the unpaid shipping charges...............................6

    II.    The bedrock rule of carriage cases is that the carrier, in this case, Plaintiff Spedag Americas, Inc., gets paid, even if that means that a consignee, like Defendant Bioworld Merchandising, Inc., must pay twice.......................................................................................8

    III.    Defendant Bioworld Merchandising, Inc.'s right to challenge Plaintiff Spedag Americas, Inc.'s shipping charges is time-barred by its failure to initiate the process to contest the billed invoices within 180 days, as required by 49 USC §13710(3)(B)...................10


**IV.    Plaintiff Spedag Americas, Inc. is entitled to costs of collection, including reasonable attorney's fees, and interest at 15% per annum, under the Terms and Conditions of Service, which govern the transaction pursuant to 49 CFR §377.203, 49 USC §13703, 49 USC §13710, and 49 USC §14706.** ................................................................................................................11

**CONCLUSION** ................................................................................................................14

**CERTIFICATE OF SERVICE** ........................................................................................14

## TABLE OF AUTHORITIES

Cases

Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986) ...................... 5, 6
Cerdant, Inc. v. DHL Express (USA), Inc., 2010 WL 3397501, *5 (S.D. Ohio, 2010) .................................. 11
Exel Transp. Servs., Inc. v. CSX Lines LLC, 280 F. Supp. 2d 617 (S.D. Tex. 2003) .................................. 8, 9
Hughes Aircraft Co. v. N. Am. Van Lines, Inc., 970 F.2d 609, 612 (9th Cir. 1992) ........................................ 12
Jessica Howard Ltd. v. Norfolk Southern R.R. Co., 316 F.3d 165 (2nd Cir. 2003) ............................................ 12
Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc., 2012 WL 4060971 (W.D. NY, 2012) ............ 11
Louisville & Nashville R. Co. v. Central Iron Co., 265 U.S. 59, 65–67, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924) ................................................................................................................................................. 10
Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 361, 64 S.Ct. 128, 130, 88 L.Ed. 96 (1943) .................................................................................................................................................................. 10
Nat'l Motor Freight Traffic Ass'n, Inc. v. Gen. Servs. Admin., 25 F. Supp. 3d 52, 57 (D.D.C. 2014) ........ 10, 11
New York, N. H. & H. R. Co. v. ICC, 200 U.S. 361, 391, 26 S.Ct. 272, 276, 50 L.Ed. 515 (1906) ................ 10
OneBeacon Ins. Co. v. Haas Industries, Inc., 634 F.3d 1092, 1100 (9th Cir. 2011) ......................................... 12
Pittsburgh, C., C. & St. L. R. Co. v. Fink, 250 U.S. 577, 581–583, 40 S.Ct. 27, 27–28, 63 L.Ed. 1151 (1919) .................................................................................................................................................................. 10
S. Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 343–44, 102 S. Ct. 1815, 1821, 72 L. Ed. 2d 114 (1982) ............................................................................................................................................. 10
Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc., 331 F.3d 834, 838 (11th Cir. 2003) ........................ 12
Texas & P. Ry. Co. v. Leatherwood, 250 U.S. 478, 481, 39 S. Ct. 517, 518, 63 L. Ed. 1096 (1919) ................ 7

Statutes

49 USC §13102(3) ............................................................................................................................................ 6
49 USC §13102(a) .......................................................................................................................................... 10
49 USC §13703(f)(A) ..................................................................................................................................... 11
49 USC §13707(b)(1) ....................................................................................................................................... 9
49 USC §13710(a)(1) ..................................................................................................................................... 12
49 USC §14706 ................................................................................................................................................ 6
49 USC §14706(a)(2) .................................................................................................................................. 6, 10
US Code Title 49 ..................................................................................................................................... 6, 7, 11

Regulations

49 CFR §1030 ............................................................................................................................................. 6, 10
49 CFR §377.203 ........................................................................................................................................ 9, 11
49 CFR §1035.1 .......................................................................................................................................... 6, 7
49 CFR §1035, App. B .................................................................................................................................. 7, 8

Rules

Federal Rule of Civil Procedure 5(b)(2) ......................................................................................................... 14
Rule 56(c) ......................................................................................................................................................... 5

Other Authorities

H.R. Conf. Rep. 104-422, 223, 1995 USCCAN 850, 908 .............................................................................. 12

3

## FACTS NOT IN ISSUE

The parties do not dispute the following facts:

a. Defendant Bioworld Merchandising, Inc. entered into an agreement with Wuxi Meishang Import & Export Co. (hereinafter, "Wuxi") for Defendant to purchase goods from Wuxi for the purpose of resale in the United States. *See* Defendant's First Amended Answer, ECF No. 33, ¶6.

b. Defendant's purchase from Wuxi required the purchased goods to be shipped from Wuxi's facility in China to Defendant's facility in the United States. *See* Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories, Answers Nos. 1; *see also* Plaintiff's Original Petition, ECF No. 1, Exhibit D-1, ¶¶6-7.

c. Plaintiff Spedag Americas, Inc., via its parent corporation, M+R Spedag Group, was hired as a freight forwarder to arrange the shipment of the goods from Wuxi's facility in China to Defendant's facility in the United Sates. *See* Plaintiff's Original Petition, ECF No. 1, Exhibit D-1, ¶¶6-7.

d. The purchased goods were delivered to Defendant's facility as agreed in August 2015, and Defendant accepted delivery thereof, including acceptance of the Bills of Lading for the shipments. *See* Plaintiff's Original Petition, ECF No. 1, Exhibit D-1, ¶¶6-7.

## ADDITIONAL BACKGROUND

Plaintiff Spedag Americas, Inc. filed the within action to recover shipping charges incurred in the shipment of goods that Defendant Bioworld Merchandising, Inc. purchased from Wuxi. *See* Plaintiff's Original Petition, ECF No. 1, Exhibit D-1, ¶6. Plaintiff Spedag Americas, Inc. is the U.S. subsidiary of the M+R Spedag Group, which includes, in addition to Plaintiff, MCL-Multi Container Line, Inc. dba Transpac CargoLine, M+R Forwarding (China) Ltd., and M+R Forwarding (Hong Kong) Ltd. *See* Affidavit of Stephen Bucher, Vice President, Spedag Americas, Inc. at ¶¶5-7 (Appendix p34). M+R Spedag Group was hired as the freight forwarder to arrange the transportation of the goods Defendant purchased from Wuxi from Wuxi's facility in China to Defendant's facility in

the United States. *Id.* at ¶8. M+R Spedag Group, including Plaintiff, arranged the individual carriers, export and important documents, and paid duties and individual independent contractor carriers for the transportation of the goods. *Id.* at ¶¶9-11. The contractors picked up freight from Wuxi, the consignor, and, with Plaintiff's assistance, transported the goods to Defendant, the consignee, successfully. *Id.*

The goods were delivered to Defendant with the bills of lading as required by the Transportation Code, and an invoice for the shipping fees was sent to Wuxi. *Id.* at ¶11. M + R Forwarding (China) Ltd., Plaintiff's sister corporation in China, attempted to recover the unpaid fees from Wuxi, including filing a lawsuit in China regarding those fees, but Wuxi filed bankruptcy and is insolvent. *Id.* at ¶13. Plaintiff was unable to recover any money from Wuxi, which is now out of business. *Id*. M+R Forwarding (China) Ltd. then transferred the collection efforts to Plaintiff Spedag Americas, Inc. to seek recovery of the amounts due from the consignee, Defendant Bioworld Merchandising, Inc. *Id.; see also* January 4, 2017 Interoffice Memorandum (Appendix p37); *see also* Assignment of Accounts Receivable (Appendix p39). To date, there remains due and owing to Plaintiff $237,519.03 in unpaid shipping fees. *See See* Affidavit of Stephen Bucher, Vice President, Spedag Americas, Inc. at ¶16 (Appendix p35); *see also* Spreadsheet of Invoices Due (Appendix p41).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(C) dictates that an entry of summary judgment is proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *see also* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986). In <u>Celotex</u>, the Supreme Court detailed the usefulness of the summary judgment mechanism:

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).

Celotex, 477 U.S. at 327.

The case at bar is just such a case. The outcome does not depend on the Court's determination of any material fact, but instead, on the interpretation of the law, and based on the law, Plaintiff is entitled to judgment, as outlined below.

## ARGUMENTS AND AUTHORITIES

I. **The Contract Terms and Conditions set forth in 49 CFR §1035, App. B, the Code of Federal Regulation's Uniform Straight Bill of Lading, constitute contractual terms governing the shipments at issue, and pursuant to those terms, Defendant Bioworld Merchandising, Inc. is liable to Plaintiff for the unpaid shipping charges.**

Carriage cases are strictly governed by the United States Code Title 49-Transportation and the Code of Federal Regulations regarding Transportation. *See* 49 USC Subt. IV; *see also* 49 CFR §1030, *et seq.* In the case at bar, Plaintiff Spedag Americas, Inc. forwarded freight over Bills of Lading pursuant to 49 USC §14706, "Liability of Carriers under Receipts and Bills of Lading." This statute specifically includes freight forwarders in the definition of "carriers," as does the Definitions section of the Code, and the rules and regulations applying to carriers throughout Subtitle IV of US Code Title 49 apply to freight forwarders in the same way as to other carriers. 49 USC §14706(a)(2); 49 USC §13102(3) (defining "Carrier" to mean "a motor carrier, a water carrier, and a freight forwarder").

US Code Title 49 further requires carriers to "issue a Receipt or Bill of Lading for property it receives for transportation under this part," and the requirements for such Bills of Lading, and liability for payment as to freight shipped over them, is set forth in the Code of Federal Regulations on Transportation, at 49 CFR §1035. 49 USC §14706(a)(1); *see also* 49 CFR §1035.1. According to the

6

Federal Regulations, all carriers "are required to use straight bills of lading as prescribed in Appendix A and B to [49 CFR § 1035]," and while they are permitted to "vary in the arrangement and spacing of the printed matter on the face of the form," the terms must be as set forth in the regulations. 49 CFR §1035.1.

The terms and conditions of these Bills of Lading, as set forth in the regulations, specifically state, "[t]he owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property…." 49 CFR §1035, App. B, Sec. 7. These statutorily dictated terms go on to *also* hold the consignor liable, "for the freight and all other lawful charges…." *Id.* (omitted exceptions that are inapplicable to the case at bar).

The Supreme Court has long held that these bills of lading constitute a contract for the carriage of freight between shippers and carriers.

> [T]he parties to a bill of lading cannot waive its terms, nor can the carrier by its conduct give the shipper a right to ignore them. 'A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed.' The bill of lading given by the initial carrier embodies the contract for transportation from point of origin to destination; and its terms in respect to conditions of liability are binding upon the shipper and upon all connecting carriers, just as a rate properly filed by the initial carrier is binding upon them. Each has in effect the force of a statute, of which all affected must take notice.

Texas & P. Ry. Co. v. Leatherwood, 250 U.S. 478, 481, 39 S. Ct. 517, 518, 63 L. Ed. 1096 (1919).

US Code Title 49 does permit shippers and carriers to enter into a private carriage contract that substitutes for the bill of lading set forth in the Code of Federal Regulations, but in order to waive any of their rights and remedies under US Code Title 49, a separate written agreement must expressly waive the same and must be affirmatively acknowledged by each party. 49 USC §14101(b)(1). In this case there was no such separate, affirmative, mutually accepted agreement that waived any of the rights and remedies of US Code Tile 49 or alleviating either the shipper consignor or shipper consignee of payment liability.

In the case at bar, therefore, in accordance with the Code of Federal Regulations regarding Transportation, there can be no dispute that Defendant Bioworld Merchandising, Inc., the consignee in this transaction, is liable for the freight and all other lawful charges incurred in transporting the goods at issue. Wuxi, the consignor in this matter, is jointly liable for the charges, but this fact does not absolve Defendant from liability, as clearly set forth in 49 CFR §1035, App. B, Sec. 7.

II. **The bedrock rule of carriage cases is that the carrier, in this case, Plaintiff Spedag Americas, Inc., gets paid, even if that means that a consignee, like Defendant Bioworld Merchandising, Inc., must pay twice.**

Throughout these proceedings, Defendant Bioworld Merchandising, Inc. has tried to argue that it should not be liable for the shipping charges incurred in transporting its goods because it "paid the freight charges for the shipments at issue to the shipper," Wuxi. *See* Defendant's Objections and Answers to Plaintiff's First Set of Interrogatories, Answers Nos. 3, 6, 8, 9, 10, 11, 12, 17, 18, 20 (Appendix pp7-12). Even if Defendant paid the shipper for the transportation charges at it repeatedly states, if the carrier was not paid by that shipper, as in this case, Defendant is still liable to Plaintiff, the carrier.

The U.S. District Court for the Southern District of Texas heard a similar situation in Exel Transp. Servs., Inc. v. CSX Lines LLC. *See* Exel Transp. Servs., Inc. v. CSX Lines LLC, 280 F. Supp. 2d 617 (S.D. Tex. 2003). In Exel, the hotel chain, Marriott International, used a freight forwarder, Exel Transportation Services, to deliver cargo shipments to its hotel site. *Id.* at 618. Exel then hired a second freight forwarder, Cab Logistics, which in turn hired, CSX Lines to transport the cargo. *Id.* CSX Lines billed Marriott directly, and when Marriott complained about the bills to Exel, Exel asked CSX Lines to stop billing Marriott and bill Cab Logistics instead. *Id.* In that case, the court found that even though it had already paid Cab Logistics for the shipping, Marriott was jointly and severally

8

liable with Cab Logistics to CSX Lines for the charges incurred shipping the cargo. *Id.* at 619. Specifically, the Exel court concluded,

> The bedrock rule of carriage cases is that, absent malfeasance, the carrier gets paid. It is superficially unfair that Exel and Marriott must pay for the shipments twice. However, allowing them the benefit of carriage without compensating the carrier would eventually cripple the shipping industry, and the economy generally, as carriers devoted their time to investigating potential customers. The entire point of the tariff regime—promoting commerce by removing shippers' credit-worthiness from a carrier's list of concerns—would be eviscerated.
>
> CSX's tariff indicated Marriott's liability as shipper and consignee. CSX neither released Exel from liability nor misrepresented Cab's payments…. [I]t is not CSX's responsibility to investigate every company that wants to ship goods at CSX's tariff rates. Marriott and Exel are liable for CSX's unpaid shipping charges.

*Id.* at 619. The bedrock rule referenced in the Exel case is a legal doctrine consistent with 49 USC §13707(b)(1) which changed the law with regard to carriers, allowing them to extend credit to shippers instead of holding the freight until the fees were paid. 49 USC §13707(b)(1) also provides the statutory authority for 49 CFR §377.203 to permit carriers the right of "Extension of Credit to Shippers." Now that carriers can grant credit to shippers, commerce can flow more freely, but the statutes still require that carriers must get paid. This means unless the carrier (freight forwarder) physically steals the load, no matter what, the carrier is entitled to payment in full from all shippers even if it means the shippers have to pay twice but the second time directly to the carrier.

In the case at bar, as in Exel, we have a purchaser, Defendant Bioworld Merchandising, Inc., arguing that it paid someone other than the carrier for the transportation charges. Here, it was Wuxi, the seller, who failed to pass on any such payments to the carrier, Plaintiff Spedag Americas, Inc. As in Exel, because Wuxi failed to pass on those payments to Plaintiff Spedag Americas, Inc., Defendant Bioworld Merchandising, Inc. is liable for the charges, regardless of any payments it made to Wuxi, or anyone else who was not a carrier of its goods.

The federal statutes specifically state that, "[a] freight forwarder is both the receiving and delivering carrier," and the United States Supreme Court has found that carriers have not just a right,

9

but "a duty to recover [their] proper charges for services performed…," in order to "achieve uniformity in freight transportation charges, and thereby to eliminate discrimination and favoritism…." *See* 49 USC §14706(a)(2); *see also* S. Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 343–44, 102 S. Ct. 1815, 1821, 72 L. Ed. 2d 114 (1982) (*citing* Louisville & Nashville R. Co. v. Central Iron Co., 265 U.S. 59, 65–67, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924), Pittsburgh, C., C. & St. L. R. Co. v. Fink, 250 U.S. 577, 581–583, 40 S.Ct. 27, 27–28, 63 L.Ed. 1151 (1919), Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 361, 64 S.Ct. 128, 130, 88 L.Ed. 96 (1943); New York, N. H. & H. R. Co. v. ICC, 200 U.S. 361, 391, 26 S.Ct. 272, 276, 50 L.Ed. 515 (1906).)

Plaintiff Spedag Americas, Inc., acting as a freight forwarder in the case at bar, was, by federal statute, a carrier. Plaintiff was subject to the same requirements as a carrier, and entitled to the benefits of a carrier. As the bedrock rule of carriage states, the carrier must be paid. Plaintiff, who fulfilled its role as carrier, must be paid.

III. **Defendant Bioworld Merchandising, Inc.'s right to challenge Plaintiff Spedag Americas, Inc.'s shipping charges is time-barred by its failure to initiate the process to contest the billed invoices within 180 days, as required by 49 USC §13710(3)(B).**

Section 13710 of title 49 of the U.S. Code "governs, among other things, billing disputes between motor carriers and shippers." Nat'l Motor Freight Traffic Ass'n, Inc. v. Gen. Servs. Admin., 25 F. Supp. 3d 52, 57 (D.D.C. 2014). These federal statutes provide a clear process for a shipper, such as Defendant, to contest charges billed by a carrier, but the statute requires,

> If a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the [Surface Transportation] Board determine whether the charges billed must be paid. A shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges.

49 USC §13710(3)(B); *see also* 49 USC §13102(a) (Definition of "Board"). In other words, "A shipper must raise a challenge to the transportation charges 'within 180 days of receipt of the bill,'

10

otherwise its challenge is time-barred." Nat'l Motor Freight, 25 F. Supp. 3d at 57; *see also* Cerdant, Inc. v. DHL Express (USA), Inc., 2010 WL 3397501, *5 (S.D. Ohio, 2010) (Appendix pp20-28). The requirement to contest transportation charges within 180 days of receipt of the bill is a condition precedent to raising such an argument. Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc., 2012 WL 4060971 (W.D. NY, 2012) (Appendix pp30-32).

In the case at bar, Defendant admits that it, "did not submit a request to contest the shipping charges billed by Plaintiff or its subsidiaries to the Surface Transportation Board within 180 days of the Defendant's receipt of the bill." *See* Defendant Bioworld Merchandising, Inc.'s Objections and Responses to Plaintiff Spedag Americas, Inc.'s First Request for Admissions, Request for and Response to Admission No. 12 (Appendix p17). Plaintiff specifically plead this time-bar in its Original Petition, satisfying the conditions precedent to it making this claim now. *See* Plaintiff's Original Petition, ECF No. 1, Exhibit D-1, ¶¶21-22. Therefore, Defendant's challenge to Plaintiff's transportation charges herein are plainly time-barred.

IV. **Plaintiff Spedag Americas, Inc. is entitled to costs of collection, including reasonable attorney's fees, and interest at 15% per annum, under the Terms and Conditions of Service, which govern the transaction pursuant to 49 CFR §377.203, 49 USC §13703, 49 USC §13710, and 49 USC §14706.**

The Code of Federal Regulations specifically permits shippers to collect "service charges" as well as "reasonable and certain liquidated damages for all costs incurred in the collection of overdue freight charges." 49 CFR §377.203(e), (g).

In order for these additional rules to bind the parties, the US Code Title 49 requires that "[r]outes, rates, classifications, mileage guides, and rules established under agreements approved under this section shall be published and made available for public inspection upon request." 49 USC §13703(f)(A). This requirement is reiterated in §13710, which states, "[a] motor carrier of property… shall provide to the shipper, on request of the shipper, a written or electronic copy of the rate,

11

classification, rules, and practices, upon which any rate applicable to its shipment or agreed to between the shipper and carrier is based." 49 USC §13710(a)(1).

The Code goes on to say that such published terms and conditions can and do alter the rates, rules, and liability of the carrier, so long as they are available to the shipper, as set forth in 49 USC §13710(a)(1). *See* 49 USC §14706(c)(1); *see also* Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc., 331 F.3d 834, 838 (11th Cir. 2003). This requirement that the carriers make their terms and conditions available to shippers is part of the 1995 revisions to Title 49, the purpose of which was, "to return to the pre-TIRRA situation where shippers were responsible for determining the conditions imposed on the transportation of a shipment." H.R. Conf. Rep. 104-422, 223, 1995 USCCAN 850, 908; *see also* Sassy Doll, 331 F.3d at 841. Courts have gone on to conclude that these statutes mean that rules set forth by the shippers, sometimes called "Rules," "Rules Circulars," "Tariffs," "Terms and Conditions," etc., and made available in accordance with those statutes, are binding and dictate the rates, liability, and rules of carriage, along with the statutes and the bills of lading. *See* Jessica Howard Ltd. v. Norfolk Southern R.R. Co., 316 F.3d 165 (2nd Cir. 2003); *see also* Hughes Aircraft Co. v. N. Am. Van Lines, Inc., 970 F.2d 609, 612 (9th Cir. 1992); OneBeacon Ins. Co. v. Haas Industries, Inc., 634 F.3d 1092, 1100 (9th Cir. 2011).

In addition to the Straight Bills of Lading referenced in section I, above, the transactions between Wuxi, Plaintiff Spedag Americas, Inc., and Defendant Bioworld Merchandising, Inc. were governed by the Terms and Conditions of Service provided to the consignor and consignee, and attached hereto. Terms and Conditions of Service (Appendix pp172-180).

The Terms and Conditions were never requested by Defendant, but were freely available. At all times relevant hereto, Plaintiff's Terms and Conditions of Service were freely available on its website, and they are still viewable at www.mrspedag.com/wp-content/uploads/MCL_Multi-

Container_Line.pdf and www.mrspedag.com/wp-content/uploads/Spedag_Americas.pdf. *See* Affidavit of Stephen Bucher, ¶9 (Appendix p34).

The applicable Terms and Conditions of Service define the interest rate that will accrue on unpaid balances, and permits the recovery of Plaintiff Spedag Americas, Inc.'s collection costs and attorney's fees when there is a dispute such as the case at bar involving monies owed to Plaintiff.

> 13. Costs of Collection
>
> In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 15% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to by Company.

Terms and Conditions of Service, ¶13 (Appendix p175). Pursuant to the Terms and Conditions, in addition to the shipping charges originally billed to the consignee and consignor, there has now accrued, and continues to accrue, contractual interest, at the rate of 15% per annum. Plaintiff sent a written demand to Defendant on April 18, 2016 for the $237,519.03 due and owing. *See* April 18, 2016 Demand Letter from M+R Spedag Group to Bioworld Merchandising, Inc. (Appendix p182). Therefore, Plaintiff is entitled to interest at the rate of 15% per annum from no later than April 18, 2016, on the balance of $237,519.03. In addition, because Defendant did not pay the balance due to Plaintiff in response to the April 18, 2016 Demand Letter, Plaintiff hired a collection agency and attorneys to recover the amount due, at a cost of $47,503.81. *See* June 7, 2016 Demand Letter from Spedag Americas, Inc.'s Attorney to Bioworld Merchandising (Appendix pp184-185); *see also* Affidavit of Stephen Bucher (Appendix pp34-35). Pursuant to the Terms and Conditions of Service, therefore, Plaintiff is entitled to recover those fees from Defendant as well.

## CONCLUSION

Wherefore, Plaintiff respectfully requests that summary judgment be entered in its favor and against Defendant, in the amount of $237,519.03, plus contractual interest at the rate of 15% per annum from April 18, 2016, collection costs in the amount of $47,503.81, and court costs.

Respectfully submitted this 5th day of October 2018.

**RATHBONE GROUP, LLC**

/s/ *Rebecca W. Wright*
REBECCA W. WRIGHT, SBN 24085009
JESSICA R. LOBES, SBN: 24083405
1001 Texas Avenue, Suite 1400
Houston, TX 77002
800-870-5521
216-298-4495 (fax)
RWright@RathboneGroup.com
JLobes@RathboneGroup.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

On October 5, 2018, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

*/s/ Rebecca W. Wright*
REBECCA W. WRIGHT