**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**


| | | |
|---|---|---|
| **SPEDAG AMERICAS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:17-CV-0926-BT** |
| | § | |
| **BIOWORLD MERCHANDISING, INC.,** | § | |
| | § | |
| **Defendant.** | § | |


**DEFENDANT BIOWORLD MERCHANDISING, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# Contents

I. OVERVIEW AND SUMMARY OF MOTION .......................................................................1

II. SUMMARY JUDGMENT EVIDENCE .........................................................................2

III. UNDISPUTED FACTS ...................................................................................................2

    A.    DEFENDANT ORDERS APPAREL FROM OVERSEAS MANUFACTURER. ...........................2

    B.    WUXI ARRANGES TO HAVE THE FREIGHT SHIPPED. ......................................................3

    C.    M+R FORWARDING OBTAINS A JUDGMENT AGAINST WUXI FOR UNPAID
          SHIPPING CHARGES. ......................................................................................................4

    D.    PLAINTIFF FILES SUIT AGAINST DEFENDANT. .................................................................4

IV. ARGUMENT AND AUTHORITIES ...............................................................................4

    A.    SUMMARY JUDGMENT STANDARD. ..............................................................................4

    B.    THERE IS AN ABSENCE OF EVIDENCE TO SUPPORT PLAINTIFF'S CASE. ......................6

        1.    The statutes that Plaintiff relies upon to establish Defendant's liability are
             inapplicable. ...............................................................................................................6

        2.    Defendant is not liable to Plaintiff under the terms and conditions of
             the bills of lading. .....................................................................................................8

    C.    IN ANY EVENT, PLAINTIFF IS ESTOPPED FROM COLLECTING THE
          FREIGHT CHARGES FROM DEFENDANT. .......................................................................10

        1.    The "freight prepaid" notation constitutes a misrepresentation of fact. ............13

        2.    Defendant reasonably relied upon the "freight prepaid" notation. ....................13

        3.    Defendant's relied upon the notation to its detriment. .........................................14

V. CONCLUSION.................................................................................................................14

Case 3:17-cv-00926-BT   Document 40   Filed 10/05/18   Page 3 of 19   PageID 622

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
    106 F.3d 11 (2d Cir. 1995).................................................................................................7

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
    213 F.3d 474 (9th Cir. 2000) ...........................................................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1985).........................................................................................................4

*Century Sur. Co. v. Seidel*,
    893 F.3d 328 (5th Cir. 2018) ...........................................................................................3

*Consol. Freightways Corp. of Del. v. Admiral Corp.*,
    442 F.2d 56 (7th Cir. 1971) ...............................................................................10, 12, 13

*Duffie v. U.S.*,
    600 F.3d 262 (5th Cir. 2010) ...........................................................................................4

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir. 1986) .........................................................................................4

*Giles v. Gen. Elec. Co.*,
    245 F.3d 474 (5th Cir. 2001) ...........................................................................................4

*Harms Farms Trucking v. Woodland Container*,
    4:05CV3185, 2006 WL 3483920 (D. Neb. Nov. 30, 2006).........................................10

*Minard v. ITC Deltacom Communications, Inc.*,
    447 F.3d 352 (5th Cir. 2006) ...........................................................................................9

*Oak Harbor Freight Lines v. Sears Roebuck & Co.*,
    420 F. Supp. 2d 1138 (W.D. Wash. 2006)...................................................................10

*In re Penn-Dixie Steel Corp.*,
    6 B.R. 817 (Bankr. S.D.N.Y. 1980), aff'd, 10 B.R. 878 (S.D.N.Y. 1981) ...............9

*Spedag Americas, Inc. ex rel. M + R Spedag Asia Group Members v. Petters*
    *Hosp. & Entm't Group LLC*,
    07-80576-CIV, 2008 WL 3889551 (S.D. Fla. Aug. 18, 2008)..........................9, 10

*S. Auto Sound, Inc. v. Consol. Freightways, Inc.*,
    510 So.2d 1085 (Fla. Dist. Ct. App. 1987) .......................................................10, 11, 12, 13

21438248v.8

*S. Pac. Transp. Co. v. Campbell Soup Co.*,
    455 F.2d 1219 (8th Cir. 1972) ..........................................................................................9

*Yumilicious Franchise, L.L.C. v. Barrie*,
    819 F.3d 170 (5th Cir. 2016) ............................................................................................4

**Statutes**

49 U.S.C. 13012(13) ..........................................................................................................5, 6

49 USC 13707(b)(1) ..............................................................................................................5

**Other Authorities**

49 CFR 37.203 (a)(1)(i)(ii)(2)................................................................................................5

Federal Rules of Civil Procedure Rule 56 ........................................................................1, 3

21438248v.8

Defendant Bioworld Merchandising, Inc. ("Defendant") files this Brief in Support of Its Motion for Summary Judgment (the "Motion") against Plaintiff Spedag Americas, Inc. ("Plaintiff") in accordance with Rule 56 of the Federal Rules of Civil Procedure and Rule 56.5 of the Local Rules of the United States District Court for the Northern District of Texas, and shows as follows:

**I.**
**OVERVIEW AND SUMMARY OF MOTION**

This action arises from approximately forty international shipments of freight from Chinese clothing seller, Wuxi Meishang Import & Export Co. LTD ("Wuxi") to Defendant's California warehouse.  Plaintiff Spedag Americas, Inc. ("Plaintiff") alleges that its subsidiary, M+R Forwarding (China) Ltd. ("M+R Forwarding") was never paid freight forwarding charges for the shipments and has sued Defendant in an attempt to recover these charges.  For its part, Defendant avers that it paid all charges that it owed to Wuxi—including shipping charges—and it is not liable to Plaintiff, M+R Forwarding, or anyone else for any additional charges related to the shipments.

Plaintiff's theory of liability relies upon a number of federal statutes and the terms and conditions that it claims were attached to the bills of lading.  Defendant will show, however, that the statutes Plaintiff relies upon do not apply to the shipments at issue and do not make Defendant liable for any unpaid shipping charges.  Defendant will further show that it is not liable under the purported terms and conditions because Plaintiff is not entitled to any rights under the provisions therein.  Alternatively, because there is no evidence that the terms and conditions produced by Plaintiff apply to the air waybills, the only documents at issue are the bills of lading.  As discussed herein, Plaintiff is therefore estopped from recovering on the air waybills.

Finally, even if Defendant is liable to Plaintiff for the alleged unpaid shipping charges, Plaintiff is clearly estopped from recovering against Defendant because Defendant reasonably and

justifiably relied upon the "freight prepaid" markings on the bills of lading and air waybills when

it rendered payments to Wuxi.  Defendant is therefore entitled to summary judgment and Plaintiff's

claim must be dismissed with prejudice.

## II.
## SUMMARY JUDGMENT EVIDENCE

**Exhibit A**    Affidavit of Bhavin Shah

**Exhibit B**    Affidavit of Justin V. Lee

**Exhibit B-1**  Plaintiff Spedag Americas, Inc.'s Supplemental Responses to Defendant Bioworld Merchandising, Inc.'s First Set of Interrogatories (attached to Affidavit of Justin V. Lee)

**Exhibit B-2**  Plaintiff Spedag Americas, Inc.'s Response to Defendant Bioworld Merchandising, Inc.'s Second Set of Interrogatories (attached to Affidavit of Justin V. Lee)

**Exhibit B-3**  Interoffice Memorandum from M+R Forwarding (China) Ltd. to Spedag Americas Inc., dated January 4, 2017 (attached to Affidavit of Justin V. Lee)

**Exhibit B-4**  Assignment of Accounts Receivable, dated June 7, 2016 (attached to Affidavit of Justin V. Lee)

**Exhibit B-5**  Bills of Lading and Air Waybills (attached to Affidavit of Justin V. Lee)

**Exhibit B-6**  Terms and conditions of bills of lading produced during discovery (attached to Affidavit of Justin V. Lee)

**Exhibit C**    Declaration of Cheuk Wong

**Exhibit C-1**  Civil Judgment Paper from Shanghai Maritime Court (English translation), dated September 28, 2016 (attached to Declaration of Cheuk Wong)

## III.
## UNDISPUTED FACTS

A.    **DEFENDANT ORDERS APPAREL FROM OVERSEAS MANUFACTURER.**

Defendant is a design and distribution company of licensed and branded apparel, headwear,

and other accessories.  **Ex. A**, p. 2, ¶ 3.  As part of its business, Defendant regularly orders apparel

from overseas manufacturers for resale in the United States and elsewhere.  *Id.*  The international

shipments at issue in this case involved orders of t-shirts and other apparel (the "Freight") from Chinese clothing seller, Wuxi, a company that Defendant had ordered from in the past. *Id.* at p.3, ¶ 6.

**B.     WUXI ARRANGES TO HAVE THE FREIGHT SHIPPED.**

According to Plaintiff's Original Petition (the "Complaint"),[1] Wuxi entered into a freight forwarding arrangement with Plaintiff to have Plaintiff's "affiliates" forward the Freight to Defendant's California warehouse in mid to late 2015. *See Compl.*, ¶ 7. Although Plaintiff alleged in its Complaint that it "arranged and paid for" the shipments at issue,[2] it should be noted that Plaintiff has since specified that it is merely the parent company of M+R Forwarding, the entity that actually arranged the shipments. *See* **Ex. B-1**, p. 3. Plaintiff has asserted that the claim was "assigned" to it by M+R Forwarding. *See* **Ex. B-2**, p. 2; *see also* **Ex. B-3** ("[T]he receivables are being turned over to Spedag Americas Inc. and Spedag Americas Inc. will be the new owners of the receivable for the time being."); **Ex. B-4**.

Each of the shipments were shipped pursuant to either a bill of lading or air waybill (collectively, the "Shipping Documents"). *See generally* **Ex. B-5**, pp. 35-56. In accordance with Defendant's normal practice, Defendant would pay Wuxi only after receiving each shipment, and only after reviewing the bill of lading or air waybill for that particular shipment. **Ex. A**, p. 3, ¶ 8. Specifically, Defendant would not pay Wuxi for the shipment before reviewing the Shipping Document to ensure that it was stamped "freight prepaid," meaning the price paid by Defendant to Wuxi would include *all* shipping charges for that particular shipment. *Id.*

---

[1] Defendant understands all facts are presumed true for purposes of filing its Motion for Summary Judgment, but Defendant does not necessarily concede all of the facts alleged in Plaintiff's Complaint.
[2] *Compl.* at ¶ 6.

C.    **M+R FORWARDING OBTAINS A JUDGMENT AGAINST WUXI FOR UNPAID SHIPPING CHARGES.**

On or about July 19, 2016, M+R Forwarding filed suit against Wuxi and an individual defendant, Huang Zhuo, in Shanghai Maritime Court in China. *See* **Ex. C-1**, pp. 68-78. In its lawsuit, M+R Forwarding alleged that Wuxi had failed to pay the shipping charges at issue in the present case. *See id.* On or about September 28, 2016, the Chinese court found Wuxi and Huang Zhuo jointly and severally liable for the unpaid shipping charges. *See id.*

In a subsequent interoffice memorandum dated January 4, 2017, representatives from M+R Forwarding explained to Plaintiff's Vice President, Stephan Bucher, that M+R Forwarding had been "frustrated" in its efforts to collect the unpaid shipping charges from Wuxi. *See* **Ex. B-3**, p. 31. M+R Forwarding then directed Plaintiff to "take the lead to pursue the consignees and/or the ultimate beneficiary of the service our company rendered." *See id.*

D.    **PLAINTIFF FILES SUIT AGAINST DEFENDANT.**

On February 20, 2017, Plaintiff filed suit in the 193rd Judicial District Court of Dallas County, Texas, and Defendant timely removed the lawsuit to this Court. *Def.'s Notice of Removal* [Doc. 1]. Plaintiff alleged that Defendant, as the consignee of the aforementioned goods, is liable to Plaintiff for unpaid shipping charges for forty "freight forwarding past due invoices" totaling $237,519.77. *Compl.* at ¶ 25. Discovery in this case closed on August 31, 2018. *See id.*

**IV.**
**ARGUMENT AND AUTHORITIES**

A.    **SUMMARY JUDGMENT STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Century Sur. Co. v. Seidel*, 893 F.3d 328, 332 (5th Cir. 2018)

(citation omitted).  This standard requires the moving party to establish every essential element of its claim or defense.  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The movant has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1985).  The movant discharges his burden by "showing—i.e., pointing out to the Court—that ***there is an absence of evidence to support the non-moving party's case***."  *Id.* at 325 (emphasis added).

Once a motion for summary judgment has been filed, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.  *Duffie v. U.S.*, 600 F.3d 262, 371 (5th Cir. 2010).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of pleading but must set forth ***specific facts*** showing that there is a genuine issue for trial.  *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 178 (5th Cir. 2016) ("Pleadings are not summary judgment evidence.").  In other words, "the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 324).  This requires the opposing party to present affirmative evidence in order to defeat a properly supported motion for summary judgment:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322.

In this case, it is apparent that there is a lack of evidence to support Plaintiff's case because the statutes that Plaintiff relies upon to establish Defendant's liability are inapplicable to the present situation. Additionally, the purported terms and conditions do not make Defendant liable to Plaintiff. Finally, it is evident Plaintiff is estopped from collecting the alleged unpaid freight charges from Defendant because Defendant paid all shipping charges to Wuxi in reasonable and justifiable reliance on the freight prepaid notation on the Shipping Documents.

**B.    THERE IS AN ABSENCE OF EVIDENCE TO SUPPORT PLAINTIFF'S CASE.**

***1.    The statutes that Plaintiff relies upon to establish Defendant's liability are inapplicable.***

Plaintiff's Complaint sites a number of federal statutes in an attempt to establish Defendant's liability. Plaintiff argues that Defendant is liable because "[s]hippers that retain freight forwarders or carriers that grant credit terms are required to pay all related freight charges pursuant to 49 USC 13707(b)(1) . . . ." *Compl.* at ¶ 14. Plaintiff similarly argues that "Subsection 49 CFR 37.203 (a)(1)(i)(ii)(2) [sic] grants the carrier who relinquishes its possessory freight lien at delivery recourse against all 'shippers' if the freight charges are not paid within the credit period specified." *Id.* at ¶ 15.

Setting aside whether Plaintiff's interpretation of the statutes is correct—or whether the statutes even apply to the shipments at issue—it is apparent that Plaintiff's theory of liability under these statutes requires that Defendant be defined as a "shipper." In order to reach the conclusion that Defendant is a shipper within the meaning of the aforementioned statutes, Plaintiff asserts that Defendant falls within the definition of a "shipper" under 49 U.S.C. 13012(13) because Defendant was the consignee and owner of the goods that were shipped. *Compl.* at ¶ 12. There are, however, three critical problems with Plaintiff's theory.

First, the definition listed in 49 U.S.C. 13102(13) is not for "shipper," but for "*individual shipper.*"  *See* 49 U.S.C. § 13102(13) (emphasis added).  Second, the definition only applies to shipments of household goods:

> (13) Individual shipper.--The term "individual shipper" means any person who--
>
> > (A) is the shipper, consignor, or consignee *of a household goods shipment*;
> >
> > (B) is identified as the shipper, consignor, or consignee on the face of the bill of lading;
> >
> > (C) owns the goods being transported; *and*
> >
> > (D) pays his or her own tariff transportation charges.

*Id.* (emphasis added).

The term "household goods" is defined to mean "personal effects and property used or to be used in a dwelling."  *Id.* at § 13102(10).  As explained above, the shipments in this case contained t-shirts and other apparel that Defendant ordered from Wuxi for the purpose of resale. **Ex. A**, p. 3, ¶ 7; **Ex. C**, p. 67, ¶ 5.  The shipments did *not* contain household goods.  **Ex. A**, p. 3, ¶ 7; **Ex. C**, p. 67, ¶ 5.

Finally, even if the Freight were to fall within the definition of "household goods," Defendant would still not fall within the definition of "individual shipper" because Defendant is not listed as the consignee on the face of each and every Shipping Document.  *See, e.g.*, **Ex. B-5**, p. 45 (listing Meishang Textiles (Hong Kong) Limited as the consignee).  The definition of "individual shipper" clearly requires that the entity be "identified as the shipper, consignor, or consignee on the face of the bill of lading."  49 U.S.C. § 13102(13)(B).  Thus, even if Defendant were the consignee for each of the shipments, it is not *listed* as the consignee on each of the bills

of lading and air waybills and cannot be defined as the "individual shipper" for each of the bills of lading.[3]

In any case, Plaintiff clearly lacks supporting evidence for its claim against Defendant. The statutes Plaintiff relies upon clearly do not make Defendant liable, and Plaintiff's claim should therefore be dismissed with prejudice.

>    **2.   *Defendant is not liable to Plaintiff under the terms and conditions of the bills of lading.***

Plaintiff claims that it is a "holder" of the bills of lading and is therefore entitled to be paid because "clauses # 1 and # 17 make[] consignee BIO WORLD liable to pay Spedag's [sic] as 'holder' of the [bills of lading] they paid on behalf of both shippers." *Compl.* at ¶ 8.  But the terms and conditions that Plaintiff relies upon do not make Defendant liable to Plaintiff.[4]

First, as Plaintiff acknowledges, Plaintiff was not the freight forwarder or carrier for the shipments, but was instead "assigned" the accounts receivable for the alleged unpaid freight charges by M+R Forwarding.  *See* **Ex. B-3**, p. 31; *see also* **Ex. B-4**, p. 34.  While it is true that claims "may be freely transferred or assigned to others," the assignor must accomplish "a completed transfer of the entire interest of the assignor in the particular subject of assignment." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1995) (citation omitted).  Here, the interoffice memorandum from M+R Forwarding states: "[T]he receivables are being turned over to Spedag Americas Inc. and Spedag Americas Inc. will be the new owners of

---

[3] The definition of individual shipper uses the term "bills of lading," and it is unclear whether that term includes air waybills.  In any case, Plaintiff has the burden to show that Defendant is liable and cannot do so under the statutes it has cited.

[4] It should be noted that the terms and conditions attached to Plaintiff's Complaint are largely illegible. *See Compl.* Although Plaintiff did produce what it purports to be more legible versions of the terms and conditions during discovery (**Ex. B-6**, pp. 57-64), it is not readily apparent that they are the same terms and conditions that were attached to the Shipping Documents.  Furthermore, it is unclear whether the terms and conditions sheet attached to the Complaint are the same terms and conditions that were attached to all of the Shipping Documents.  As such, Defendant does not concede that the terms and conditions produced by Plaintiff apply to the shipments at issue, but would show that even if the terms and conditions do apply, they nevertheless fail to make Defendant liable to Plaintiff.

the receivable *for the time being*." **Ex. B-3**, p. 31 (emphasis added). In light of the "for the time being" language, it is unclear whether the purported assignment is "a completed transfer of the entire interest." *Advanced Magnetics*, 106 F.3d at 17.

Second, to the extent the "assignment" is effective—and to the extent that the supposed terms and conditions make Defendant liable to the "Carrier" for any unpaid charges[5]—Plaintiff still cannot recover against Defendant because Plaintiff is not a "Carrier" as that term is defined in the terms and conditions. The terms and conditions define "Carrier" as "MCL-Multi Container Line, Inc. . . . doing business as Transpac CargoLine." *See* **Ex. B-6**, p. 60, ¶ 1.1. The definition does **not** include M+R Forwarding or Plaintiff. Thus, even if the assignment of the receivables from M+R Forwarding to Plaintiff is effective, Plaintiff is not entitled to collect any "Charges" from Defendant or otherwise assert any rights arising from the terms and conditions.

In sum, even if Plaintiff could show that the terms and conditions apply to each and every one of the Shipping Documents (it cannot), the terms and conditions do not make Defendant liable to Plaintiff for the alleged unpaid shipping charges. Plaintiff's claim against Defendant should be dismissed with prejudice.

Alternatively, even if the terms and conditions do permit Plaintiff to recover, Plaintiff may nevertheless be limited to recovering for charges related to the bills of lading only.[6] Although Plaintiff has produced terms and conditions that are allegedly applicable to the bills of lading, Plaintiff has not produced similar terms and conditions for the air waybills. As such, there is no evidence that Defendant is liable to Plaintiff for any charges related to the air waybills and Plaintiff may not recover on the air waybills.

---

[5] *See* **Ex. B-6**, p. 64, ¶ 17.2 ("[T]he Merchant shall pay the Carrier the correct Charges . . . and the costs incurred by the Carrier in establishing the correct particulars.").
[6] However, as explained below, Defendant's estoppel defense prevails.

C.     IN ANY EVENT, PLAINTIFF IS ESTOPPED FROM COLLECTING THE FREIGHT CHARGES FROM DEFENDANT.

Even if Plaintiff did have sufficient evidence to support its claim against Defendant, it would nevertheless be estopped from collecting any unpaid shipping charges from Defendant.  The Supreme Court has recognized that "estoppel is an equitable doctrine invoked to avoid injustice in particular cases."  *See Minard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352, 358 (5th Cir. 2006) (citing *Heckler v. Community Health Servs. Of Crawford County, Inc.*, 467 U.S. 51, 59 (1984)).  A party may be estopped from pursuing a claim where:

(1)     the party to be estopped makes a misrepresentation of fact having reason to believe that the other party will rely upon it;

(2)     the other party reasonably relies upon it;

(3)     to its detriment.

*See id.*

In the shipping context, it is a well-established rule—among all modes of transportation (air, ocean, motor, and rail)—that when a bill of lading or air waybill is marked "freight prepaid," a carrier and freight forwarder are estopped from recovering freight charges against an innocent consignee.  *See, e.g., C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir. 2000) ("[W]hen the prepaid provision on the bill of lading has been marked and the consignee has already paid its bill to the consignor, the consignee is not liable to the carrier for payment of the freight charges."); *see also S. Pac. Transp. Co. v. Campbell Soup Co.*, 455 F.2d 1219, 1222 (8th Cir. 1972) (holding that a consignee may raise an estoppel defense when it has paid freight charges to the consignor); *Spedag Americas, Inc. ex rel. M + R Spedag Asia Group Members v. Petters Hosp. & Entm't Group LLC*, 07-80576-CIV, 2008 WL 3889551, at *3 (S.D. Fla. Aug. 18, 2008) ("[T]he consignee is liable for freight charges unless the bill of lading is marked 'prepaid.'"); *In re Penn-Dixie Steel Corp.*, 6 B.R. 817, 822 (Bankr. S.D.N.Y. 1980), aff'd,

10 B.R. 878 (S.D.N.Y. 1981) (holding that a consignee is not liable for freight charges "where the shipment was accompanied by a bill of lading marked 'prepaid' and the consignee has already paid the consignor.").

By contrast, had the bills of lading and air waybills been marked "freight collect," Plaintiff would be able to recover against Defendant. *Spedag Americas, Inc. ex rel. M + R Spedag Asia Group Members v. Petters Hosp. & Entm't Group LLC*, 07-80576-CIV, 2008 WL 3889551, at *3 (S.D. Fla. Aug. 18, 2008) (finding entities designated on bills of lading on consignees liable for shipping charges where the bills of lading were marked "freight collect"). But to be clear, even in cases where courts have found the consignee liable for unpaid freight charges, the courts have reiterated that a consignee is ***not*** liable where the bill of lading is marked "prepaid." *See Oak Harbor Freight Lines v. Sears Roebuck & Co.*, 420 F. Supp. 2d 1138, 1148 (W.D. Wash. 2006) (noting that a consignee is not liable when it has paid freight charges to consignor and the bill of lading is marked "prepaid."); *see also Harms Farms Trucking v. Woodland Container*, 4:05CV3185, 2006 WL 3483920, at *5 (D. Neb. Nov. 30, 2006) (observing that the consignee "could have protected itself by directly paying [the carrier] or insisting that all bills of lading were marked 'prepaid' when signed at delivery.").

As shown above, a number of federal and state courts have estopped carriers and freight forwarders from collecting on shipping charges against an innocent consignee when the bills of lading contain prepaid notations. A Florida appeals court case with similar facts illustrates the appropriateness of the application of the estoppel defense in this case.[7] In *Southern Auto Sound,*

---

[7] The *Southern Auto* court relied heavily upon a factually similar federal court case to reach its conclusion. *See Consol. Freightways Corp. of Del. v. Admiral Corp.*, 442 F.2d 56 (7th Cir. 1971) (holding a carrier is estopped from collecting shipping charges from a consignee where the delivery receipts contained a "prepaid" notation). As each of these cases illustrate, application of the estoppel defense in a shipment case does not depend upon whether the matter is in state or federal court.

*Inc. v. Consolidated Freightways, Inc.*, a buyer (Southern) purchased merchandise from two different suppliers, who in turn engaged a freight forwarder (Consolidated) to transport the merchandise to Southern's preferred destinations. *S. Auto Sound, Inc. v. Consol. Freightways, Inc.*, 510 So.2d 1085 (Fla. Dist. Ct. App. 1987). Each of the shipments contained an invoice, showing that the freight charges had been prepaid. *Id.* at 1085-86. Although the invoices were marked "prepaid," Consolidated had not in fact collected transportation costs in advance, but instead extended credit to each of the suppliers. *Id.* at 1086. When the suppliers became insolvent, Consolidated settled with them for less than the total amount due and sued Southern for the balance. *Id.* The trial court found that Southern had failed to prove its estoppel defense and entered a judgment in favor of Consolidated. *Id.*

On appeal, Southern, as the consignee, argued that the trial court erred when it found that Consolidated was not estopped from seeking payment from Southern. *Id.* Finding that Southern was indeed entitled to the estoppel defense, the appellate court reversed in favor of the consignee. *Id.*

First, the court noted that because Consolidated presented freight bills that were stamped prepaid, "Consolidated invited Southern to discharge its obligation to reimburse the suppliers for freight charges which Southern believed the suppliers had already paid." *Id.* Second, the court found that "Southern relied . . . upon the misrepresentation that the freight had been prepaid." *Id.* at 1087. In fact, Southern's "standard procedure" was to pay the suppliers only ***after*** receiving the invoices and noting that the freight charges were included in the invoice price. *Id.* at 1086. Finally, the court found that Southern had relied—to its detriment—on Consolidated's representations that the freight charges had already been paid:

> Consolidated put Southern in a position of not being able to protect itself
> from possible liability for double payments by extending credit to the

> suppliers and then failing to notify Southern of the extension of credit . . .
> until several months *after the last shipment had been received and after*
> *Southern had paid all of the freight charges directly to the supplier*.

*Id.* at 1086-87 (emphasis added). In sum, the trial court should have held that Consolidated was

estopped from requiring Southern to double pay on the freight charges. *Id.* at 1088.

Here, it is apparent that all three elements of estoppel are similarly satisfied, and Plaintiff

should therefore be estopped from collecting freight charges from Defendant.

### 1.   The "freight prepaid" notation constitutes a misrepresentation of fact.

As explained above, all of the Shipping Documents were marked "freight prepaid." *See*

**Ex. A**, ¶ 8; **Ex. B-5**. Like the freight forwarder in *Southern Auto*, Plaintiff avers that it "advanced

monies to the shippers [sic] independent contractors." *Compl.* at ¶ 8. But because the Shipping

Documents were marked "freight prepaid," Plaintiff and its affiliates—like the freight forwarder

in *Southern Auto*—invited Defendant to discharge its obligation by paying the shipping charges to

Wuxi. *See Southern Auto*, 510 So.2d at 1086; *see also Consol. Freightways Corp. of Del. v.*

*Admiral Corp.*, 442 F.2d 56, 59 (7th Cir. 1971) ("Having indicated upon delivery that payment

was sought and received . . . [carrier] invited [consignee] to discharge its obligations."). This

misrepresentation of fact (that the shipping charges had already been paid) satisfies the first

element of Defendant's estoppel defense.

### 2.   Defendant reasonably relied upon the "freight prepaid" notation.

Defendant reasonably relied upon the fact that the Shipping Documents contained freight

prepaid notations. Like the buyer in *Southern Auto*, it is Defendant's custom—i.e., its "standard

procedure"—to pay for freight (and shipping charges) only after observing the prepaid notation on

the relevant bill of lading or air waybill. **Ex. A**, p. 3, ¶ 8. Defendant did in fact follow this same

procedure for all of the shipments at issue in this case, paying for the Freight and shipping charges

only *after* receiving the Shipping Documents and seeing the freight prepaid notation. *Id.*; **Ex. C**,

p. 67, ¶ 6.  Defendant's reasonable reliance on the freight prepaid marking clearly satisfies the second element of estoppel.

### 3.    *Defendant's relied upon the notation to its detriment.*

It is indisputable that Defendant relied upon the freight prepaid notation before paying the shipping charges.  **Ex. A**, p. 3, ¶ 8.  It is similarly undisputed that Defendant now faces liability as a result of the misrepresentation of Plaintiff and its agents.  Like the buyer in *Southern Auto*, Defendant was unable to protect itself from possible liability for double payment because of the freight prepaid markings on the Shipping Documents.  *See Southern Auto,* 510 So.2d at 1086-87; *see also Admiral*, 442 F.2d at 59 (holding that "prepaid" notations "deprived [consignee] of its ability to protect itself from possible double liability.").  Accordingly, Defendant has satisfied the third and final element of estoppel.  Plaintiff is therefore estopped from double collecting the freight charges from Defendant, and Plaintiff's claim must be dismissed with prejudice.

## V.
## CONCLUSION

Defendant is entitled to summary judgment on Plaintiff's claim because there is an absence of evidence to supporting the claim.  Defendant is further entitled to summary judgment on its affirmative defense of estoppel because it has conclusively proven all elements of estoppel.  Accordingly, Defendant respectfully requests that the Court grant this summary judgment dismissing Plaintiff's claim in its entirety and for such other relief to which it may be entitled.

Respectfully submitted,

/s/ *Justin V. Lee*
**Michael L. Knapek**
State Bar No. 11579500
**Justin V. Lee**
State Bar No. 24097982
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, TX  75201
Telephone:  (214) 953-6040
Facsimile:  (214) 661-6644
mknapek@jw.com
jlee@jw.com

**ATTORNEYS FOR DEFENDANT**
**BIOWORLD MERCHANDISING, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of October, 2018, the foregoing document was filed with the clerk of the court of the U.S. District Court, Northern District of Texas, via its Electronic Case Filing system, which provides electronic notification of this filing to all counsel appearing in this action.

/s/ *Justin V. Lee*
Justin V. Lee