IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SPEDAG AMERICAS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>BIOWORLD MERCHANDISING, INC.,<br><br>    Defendant. | Case No. 3:17-cv-0926-BT |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Spedag Americas, Inc.'s and Defendant Bioworld Merchandising, Inc.'s cross Motions for Summary Judgment (ECF Nos. 36 & 39, respectively) and Defendant's Motion to Strike Plaintiff's Reply in Support of its Motion for Summary Judgment (ECF No. 51). For the reasons stated, the Court DENIES Plaintiff's Motion for Summary Judgment, GRANTS Defendant's Motion for Summary Judgment, and GRANTS Defendant's Motion to Strike.

**Background**

This case arises from a series of international shipments from a Chinese clothing seller, Wuxi Meishang Import & Export Co., Ltd. ("Wuxi"), to Defendant Bioworld Merchandising, Inc. ("Bioworld") in 2015. *See* Orig. Pet. 2, ¶¶ 6-7 (ECF No. 1-4). In 2015, Bioworld purchased t-shirts and other apparel from Wuxi, and Wuxi engaged M+R Forwarding China, Ltd. ("M+R"), a Spedag Americas, Inc. ("Spedag") affiliate, to carry Bioworld's clothing orders to Bioworld's California

1

warehouse. *Id.*; Def.'s App. Supporting Resp. Pl.'s Mot. Summ. J. 11 (ECF. No. 44) ("Def.'s App."). Each shipment had a corresponding bill of lading or air waybill. Def.'s Br. Support Resp. Pl.'s Mot. Summ. J. 5 (ECF No. 43) ("Def.'s Resp."); *see generally* Pl.'s App. Mot. Summ. J. 127-171 (ECF No. 38) ("Pl.'s App."). And each bill of lading and air waybill was marked "Freight Prepaid" or "DPP." Def.'s Resp. 5; Def.'s App. 3. Bioworld avers that it paid Wuxi the amount owed for the goods, which Bioworld understood to include all shipping charges for those goods, and Wuxi, in turn, arranged for the shipping and was to pay all the shipping charges to M+R. Def.'s App. 3. But Wuxi did not pay M+R what it owed for the shipments in question, and on September 28, 2016, M+R obtained a judgment against Wuxi in Shanghai Maritime Court for the unpaid charges. Def.'s App. 77. M+R was unable to collect its judgment from Wuxi, so it "handed off" to Spedag, its parent company, the responsibility of doing so. Def.'s App. 28; *see also* Pl.'s App. 37. In exchange for its collection efforts, Spedag purportedly became the owner of the right to collect the judgment. Pl.'s App. 37; 39. Spedag's efforts to collect the judgment from Wuxi also failed. *Id.* at 35. Accordingly, on February 20, 2017, Spedag sued Bioworld in the 193rd Judicial District Court of Dallas County, Texas, for breach of contract seeking $237,519.03 in unpaid shipping fees. Orig. Pet. 7, ¶ 27. Bioworld timely removed to this Court on the basis of federal question jurisdiction because Spedag's claims arise under 49 U.S.C. § 14706(d)(3). Def.'s Notice Removal 1-2 (ECF No. 1). Both parties agree that the material facts are not in dispute and move for summary judgment. Pl.'s Mot. Summ. J. 3; Def.'s Mot. Summ. J. 2.

**Preliminary Matters**

First, Bioworld moves to strike a portion of Spedag's Reply in Support of its Motion for Summary Judgment because it purportedly adds a new argument. Def.'s Mot. Strike Pl.'s Reply 2-3. "[T]he Court can decline to consider an argument raised for the first time in a reply brief." *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 551 (N.D. Tex. 2006); *see also Senior Unsecured Creditors' Comm. of First Republic Bank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (refusing to consider argument raised for first time in reply brief). Indeed, courts will generally not consider new arguments in replies because doing so would deprive the nonmovant "of a meaningful opportunity to respond." *White v. City of Red Oak*, 2014 WL 11460871, at *1 (N.D. Tex. July 31, 2014) (quotation marks and citations omitted). When new arguments are raised in a reply, a court may strike them or grant the nonmovant leave to file a surreply. *Id.*

Spedag filed its Reply in Support of its Motion for Summary Judgment on November 9, 2018. Pl.'s Reply Support Mot. Summ. J. 1-2 (ECF No. 49) ("Pl.'s Reply"). In its brief supporting its reply, Spedag argues that it is entitled to the shipping charges based on an alleged quasi-contract between the parties. Pl.'s Reply 15. But Spedag failed to assert liability based on any quasi-contract theory in its original petition or in any filing up to that point. The Court, therefore, will not consider Spedag's quasi-contract argument.

Spedag argues that by discussing quasi-contract in its reply, it did not advance a new argument, but instead further explained an argument it raised in its

Motion for Summary Judgment. In particular, Spedag urges that it is a "bedrock rule" of cases like this one that the carrier gets paid no matter what, even if the consignee must pay twice. Pl.'s Br. Supporting Mot. Summ. J. 8 ("Pl.'s MSJ Br."). In response to Bioworld's motion to strike, Spedag posits that this "bedrock rule" is based on a quasi-contract theory. Pl.'s Resp. Mot. Strike 3-4 (ECF No. 55). It is not. For its quasi-contract argument, Spedag cites *Contship Containerlines, Inc. v. Howard Industries, Inc.* Pl.'s Reply 15. In short, *Contship* imposed quasi-contract liability on a consignor for a carrier's shipping fees where the consignor had already paid the shipping to a third-party freight forwarder. *Contship Containerlines, Inc. v. Howard Indus., Inc.*, 309 F.3d 910, 914 (6th Cir. 2002). The Court, however, found that because the consignor actually delivered the goods to the carrier's vessels and the carrier delivered those goods exactly as the consignor wished, their dealings established a quasi-contract under which the consignor was liable to the carrier. *Id.*

If it is the "bedrock rule" of cases like this that the carrier gets paid in any event, even if the consignee must pay twice, it is not because a quasi-contract exists between the parties. The authority Spedag cites for this "bedrock rule" does not mention quasi-contract. *See Exel Transp. Servs., Inc. v. CSX Lines LLC*, 280 F. Supp. 2d 617 (S.D. Tex. 2003). Likewise, the authority Spedag cites for its quasi-contract theory does not mention this "bedrock rule." *See Contship*, 309 F. 3d 910. Indeed, quasi-contract is an equitable principle employed when needed to prevent unjust enrichment. *Id.* at 913. Spedag's quasi-contract theory does not explain the

4

"bedrock rule" proposed in Spedag's Motion for Summary Judgment; it is a new theory of liability. Thus, the Court will not consider it. The Court GRANTS Bioworld's Motion to Strike and will not consider Spedag's Reply in Support of its Motion for Summary Judgment to the extent it brings a new argument not raised by the response to the motion. In particular, the Court will not consider Spedag's argument that a quasi-contract arose between the parties.

Next, Bioworld objects to certain evidence submitted in support of Spedag's summary judgment motion, including paragraph 16 of Stephan Bucher's affidavit and an April 18, 2016 Demand Letter. However because none of this evidence changes the disposition of the pending motions for summary judgment, Bioworld's objection are OVERRULED as moot. *See Continental Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) (overruling as moot objections to evidence that was not considered by the court in deciding motion for summary judgment).

**Legal Standard**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to claims or defenses upon which the movant bears the burden of proof at trial, the movant must establish each element of the claim or defense "beyond peradventure." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *Bramlett v. med. Protective Co.*, No. 3:10-CV-2048-D, 2013 WL 796725, at *6 (N.D. Tex. Mar. 5, 2013). Peradventure means without uncertainty. *See In re Romulus Cmty. Sch.*, 729 F.2d 431, 435 (6th Cir. 1984).

Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R. Civ. P. 56(e)). The party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th

Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

**Analysis**

I. Spedag's Motion for Summary Judgment

The Court denies Spedag's Motion for Summary Judgment because each of its grounds for relief fails as a matter of law. Spedag moves for summary judgment on the following grounds: (1) 49 U.S.C. § 17406 (the Carmack Amendment) and the related regulations constitute contractual terms, under which Bioworld is liable to Spedag (Pl.'s MSJ Br. 6); (2) The "bedrock" rule of carriage cases is that the carrier gets paid, even if the consignee (the party to whom the goods are shipped—here, Bioworld) pays twice[1] (*Id.* at 8); and (3) Bioworld's right to challenge Spedag's right to payment is time-barred because Bioworld did not contest the shipping charges within the appropriate timeframe—that is, within 180 days of receiving the charges. (*Id.* at 10).

A. The Carmack Amendment and related regulations do not apply.

49 U.S.C. § 14706 (also known as the Carmack Amendment) provides a general rule that motor carriers and freight forwarders transporting property are liable to shippers "for the actual loss or injury to the property." *Tran Enters., LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1010-11 (5th Cir. 2010) (quoting 49 U.S.C. § 14706(a)(1)). It requires that a carrier providing transportation subject to the

---

[1] The Court discusses this ground for relief in Part II, which addresses Bioworld's Motion for Summary Judgment.

7

Surface Transportation Board's (the "Board") jurisdiction issue "a receipt or bill of lading for property it receives." 49 U.S.C. § 14706(a)(1). The Code of Federal Regulations, moreover, has strict rules regarding the terms of these bills of lading. *See* 49 C.F.R. § 1035.1 (mandating that such bills of lading conform to uniform sample bill of lading and uniform sample contract terms in appendix to Code).

Spedag relies on the Carmack Amendment and the regulations it enables to argue that Bioworld and M+R could not alter their obligations under the bills of lading and the air waybills to be different than what the regulations provide, barring some separate acknowledged agreement between them. *See* Pl.'s MSJ Br. 6-8. And Spedag's position appears to be that the regulations hold the consignee liable to the carrier as a rule and do not allow for freight prepaid bills of lading. *Id.* at 7. But Spedag's reliance on the Carmack Amendment is misplaced, as it does not apply to shipments originating overseas under a through bill of lading. *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 103 (2010).

A through bill of lading covers both the ocean and inland portions of the transport in a single document. *Id.* at 94. Here, the bills of lading and air waybills at issue are through bills of lading. The shipments originated in China. Orig. Pet. 6-7 ¶ 27. Each air waybill lists LAX as the airport of destination, and each bill of lading lists either the Port of Los Angeles or the Port of Long Beach as the port of destination. Def.'s App. 36-56; Pl.'s App. 127-171. Meanwhile, the bills of lading and air waybills also provide for delivery of each of the shipments to Bioworld's warehouse in Santa Fe Springs, California. Def.'s App. 36-56; Pl.'s App. 127-171.

Santa Fe Springs is further inland than LAX and the Ports of Los Angeles and Long Beach by some 20 miles. Because these bills of lading and air waybills provide for transport from China to ultimate delivery at places in California other than the airport or the ports, they provide for both the overseas transportation and the necessary short trek inland.[2] The shipments at issue are thus not subject to the Carmack Amendment and the strict regulations accompanying it, as they are shipments from overseas under through bills of lading.

Spedag cites several cases in its reply for the proposition that the Carmack Amendment applies to the shipments at issue. Pl.'s Reply 12. Each of them holds that the Carmack Amendment does apply to the inland portion of transport under a through bill of lading. *See, e.g., Chubb Grp. of Ins. Cos. v. H.A. Transp. Sys., Inc.*, 243 F. Supp. 2d 1064, 1068 n.3 (C.D. Cal. 2002) ("The Carmack Amendment applies to the inland leg of an overseas shipment regardless of whether the shipment is conducted under a single 'through' bill of lading or under separate bills of lading."); *Neptune Orient Lines Ltd. v. Burlington N. & Santa Fe Ry. Co.*, 213 F.3d 1118, 1119 (9th Cir. 2000) ("The language of [the Carmack Amendment] also encompasses the inland leg of an overseas shipment conducted under a single 'through' bill of lading."). However, all the cases Spedag cites predate *Kawasaki*,

---

[2] While one of the bills of lading provides for delivery in San Pedro, California after reaching the Port of Long Beach (Pl.'s App. 142), San Pedro is still five miles from the Port. All other bills of lading and air waybills provide for delivery in Santa Fe Springs.

9

which is an unambiguous declaration by the Supreme Court to the contrary. Spedag does not distinguish its cited cases from *Kawasaki*.

Because the Carmack Amendment does not apply to shipments originating overseas, Spedag's first ground for relief fails as a matter of law.

### B. The "180-day rule" does not apply.

The so-called "180-day rule" provides that if a shipper contests the charges billed, the shipper may, within 180 days of receipt of the bill, request the Board to determine whether the charges must be paid. 49 U.S.C. § 13710(a)(3)(B). However, the Board has held that the rule applies to actions initiated by shippers, "not on shipper defenses to actions initiated by carriers." *Nat'l Ass'n of Freight Transp. Consultants, Inc.-Petition for Declaratory Order*, 1997 WL 189658, at *6 (S.T.B. 1997). Indeed, "the rule has no effect on the ability of shippers to assert any available defenses in response to undercharge suits by carriers." *Id.*

Here, Bioworld does not dispute the shipping charges it was billed—it avers that it paid the shipping charges by paying Wuxi for the goods. It only disputes that it owes Spedag for the shipping charges that Wuxi owed M+R. Indeed, Bioworld disputed nothing until Spedag attempted to collect from it. It simply defends this suit Spedag initiated, which the Board recognizes as appropriate regardless of the 180-day rule.[3]

---

[3] The parties dispute whether Bioworld is a "shipper"—Bioworld argues that it is not (Def.'s Resp. 18), while Spedag appears to argue that it is (*see* Pl.'s Reply 19). For purposes of this decision, it matters not whether Bioworld is a "shipper" within the purview of the 180-day rule because the 180-day rule does not apply here.

10

Because the 180-day rule does not apply here, Bioworld is not barred from disputing the shipping charges at issue. Spedag's contention that Bioworld cannot dispute the shipping charges fails as a matter of law.

## II. Bioworld's Motion for Summary Judgment

Bioworld attacks Spedag's motion and moves for summary judgment on the following grounds: (1) The Carmack Amendment and related regulations do not apply to international shipment contracts (Def.'s Br. Supporting Mot. Summ. J. 7-8 ("Def.'s MSJ Br.")); (2) Spedag cannot collect on the shipping charges because it is not a party to the bills of lading or air waybills[4] (*Id.* at 9); and (3) Spedag is estopped from collecting the freight charges (*Id.* at 10). Bioworld's Motion for Summary Judgment is granted for the same reasons that Spedag's is denied and because Bioworld has established its estoppel defense beyond peradventure.

### A. Spedag is estopped from collecting from Bioworld, regardless of any "bedrock rule."

Spedag argues that it is the "bedrock rule" of carriage cases that the carrier gets paid in any event, even if the consignee must double-pay. Pl.'s MSJ Br. 8 (citing *Exel Transp. Servs., Inc. v. CSX Lines LLC*, 280 F. Supp. 2d 617, 619 (S.D. Tex. 2003)). But *Exel* cites no authority for such a rule, and the Court can find none. While this jurisdiction has cited *Exel* for the same proposition one time (*see*

---

[4] Bioworld argues M+R has not properly assigned Spedag the right to the judgment against Wuxi. Def.'s MSJ Br. 8; Def.'s Resp. 9. As it is not necessary to resolve the instant motions, the Court assumes without deciding that Spedag was properly assigned the right to the judgment. Nonetheless, Spedag is not entitled to collect from Bioworld.

11

*Minsa Corp. v. Almac Sys. Transp., Inc.*, 2011 WL 12907655, at *5 (N.D. Tex. June 10, 2011)), both *Exel* and *Minsa* are distinguishable and do not control. The bills of lading involved were not marked "freight prepaid" in either *Exel* or *Minsa* like they were here.

It is true that generally, consignors and consignees are jointly and severally liable to the carrier for shipping charges. *Bestway Sys., Inc. v. Gulf Forge Co.*, 100 F.3d 31, 34 (5th Cir. 1996). However, it is well-settled in numerous jurisdictions that consignees are relieved of liability to the carrier when the bill of lading has been marked prepaid and the consignee paid its bill to the consignor. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 479 (9th Cir. 2000); *Mo. Pac. R.R. Co. v. Nat'l Milling Co.*, 409 F.2d 882, 884 (3d Cir. 1969) (per curiam); *S. Pac. Transp. Co. v. Campbell Soup Co.*, 455 F.2d 1219, 1222 (8th Cir. 1972); *Consol. Freightways Corp. v. Admiral Corp.*, 442 F.2d 56, 59 (7th Cir. 1971); *United States v. Mason & Dixon Lines, Inc.*, 222 F.2d 646, 650 (6th Cir. 1955). The Fifth Circuit has not explicitly held the same, but the Court finds the decisions from the other Courts of Appeal persuasive.

*National Milling* is illustrative. There, a company (the consignee) purchased flooring from a seller (the consignor) in another state. *Nat'l Milling*, 409 F.2d at 882. The railroad carrier that carried the flooring from the consignor to the consignee acknowledged on the bill of lading that the shipping charges were prepaid by the consignor. *Id.* at 882-83. Relying on that acknowledgment, the consignee paid the consignor a sum that it assumed included the freight charges.

*Id.* at 883. When the railroad carrier was later unable to collect the shipping charges owed to it because the consignor was financially unstable, it sued the consignee to collect instead. *Id.* However, the Third Circuit held that the railroad carrier was estopped from collecting from the consignee because its notation on the bill of lading that freight was prepaid by the consignor constituted an express representation, which the consignee relied upon in good faith. *Id.* at 884.

It is undisputed that the bills of lading and air waybills in this case were each marked "freight prepaid." Def.'s App. 36-56; Pl.'s App. 127-171. And Bioworld has summitted affidavit testimony that it relied on that representation when it paid Wuxi to ship the apparel goods. Def.'s App. 3. It is therefore clear that Bioworld is relieved of the joint and several liability that might otherwise apply. The instant case is remarkably similar to *National Milling*. Here, just like in *National Milling*, a carrier cannot collect shipping charges from an insolvent consignor. And, just like in *National Milling*, the carrier seeks to instead collect from the consignee. But the same barrier to the carrier's collection from the consignee that existed in *National Milling* exists here—the bills of lading and air waybills here were each marked "freight prepaid," meaning Bioworld discharged its duty with respect to shipping charges by paying Wuxi for the goods. Therefore, the same result—that the carrier is estopped from collecting from the consignee—is appropriate.

Spedag argues that Bioworld cannot establish estoppel because it has not established that it paid Wuxi the shipping charges. Pl.'s Reply 18. Spedag further argues that Bioworld cannot establish estoppel because it has not established that

13

it relied on the "Freight Prepaid" marking on the bills of lading and the air waybills. *Id.* In particular, Spedag notes that Bioworld has not supplied "any cancelled check or receipt showing that it paid . . . the shipping charges . . . after receiving and reviewing the bills of lading." *Id.* It further points out that Bioworld does not state the amounts paid and the dates of payment. *Id.*

However, Bioworld has provided an affidavit of its Director of Product Sourcing who states that "Bioworld, in accordance with its standard procedures and customs, *paid the invoices* provided by Wuxi for the shipments at issue *only after reviewing copies of the bills of lading and air waybills and confirming that they contained the 'Freight Prepaid' marks*." Def.'s App. 3 (emphasis added). Parties may meet their respective summary judgment burdens by tendering affidavits. *Topalian*, 954 F.2d at 1131; Fed. R. Civ. P. 56(e). And Spedag has not provided any summary judgment evidence that rebuts Bioworld's affidavit on this issue. Bioworld is under no obligation to submit additional or "better" evidence.

Because the bills of lading and air waybills at issue here were marked "freight prepaid," and Bioworld has provided competent summary judgment evidence that it paid Wuxi in reliance on that notation, Spedag is estopped from collecting from Bioworld. Bioworld, by supplying the bills of lading and air waybills at issue—each clearly bearing the indication "freight prepaid"—has established estoppel beyond peradventure.

## Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 36), GRANTS Defendant's Motion for Summary Judgment (ECF No. 39), and GRANTS Defendant's Motion to Strike (ECF No. 51).

**SO ORDERED**.

September 25, 2019.

_____
REBECCA RUTHERFORD
U.S. MAGISTRATE JUDGE